29337.   PRICE *v.* OWEN *et al.*

DECIDED MARCH 20, 1942.

*C. N. Davie, R. O. Jackson,* for plaintiff.
*Ernest M. Smith,* for defendants.

MacIntyre, J. The action for damages for personal injuries was brought against the board of commissioners of roads and revenue of Henry County and E. Q. Owen, individually and as warden of Henry County. The judge dismissed the action on general demurrer and the plaintiff excepted. This appeal, as stated in plaintiff's brief, is concerned only with the liability of Owen, individually and as warden of Henry County. The petition alleged that the plaintiff sustained injuries under the following circumstances: On August 29, 1938, the plaintiff was in her automobile returning to her home. At a point within a few hundred yards from her home she was confronted by a truck coming in the opposite direction, which belonged to the board of commissioners of Henry County and was loaded with pine logs, and which was being driven by a white man, a convict, who was accompanied by another convict, a negro. "Immediately upon observing the truck approaching her, your petitioner, upon ascertaining that it was travelling at a rapid rate of speed and while at the time she was operating her car carefully and at a slow rate of speed, turned her car out of the road to the extreme right-hand side of the road, and then suddenly, to her utter astonishment, and when she saw that the truck was keeping on her side of the road and was proceeding directly toward her, and while she was on the right-hand side of the road, and at a time when your petitioner had almost stopped her car, the said convicts, while driving said loaded truck, lunged forward and struck your petitioner's car in front, completely demolishing the car and injuring your petitioner to the extent that she was unconscious, and to the extent that your petitioner was with much force hurled about between the wreckage of said car." At the time of the wreck the convicts were under the influence of intoxicants, were incapable of operating said truck, and deliberately drove the truck into the plaintiff's car, even though there was sufficient room to pass on their side of the road. It was further alleged that on the occasion in question the defendant was responsible for the personal conduct, acts, and doings of the convicts, and had released them from the camp and permitted them to use the truck to haul logs from certain farms to the public-works camp in McDonough, without a guard or an official, and the truck "was being operated with defective brakes, and so defective and worn, that said truck was being operated practically without the use of any brakes. That by permitting

said convicts to so act, as described in the preceding paragraph of this petition, they were thereby permitted without any restriction whatsoever to obtain access to intoxicating liquor. That said convicts did obtain intoxicating liquor, which they could not have done had it not been for the said defendant Owen's permitting them, two convicted convicts, to operate dangerous machinery on the public highways of this State and without any custody and control over their acts or without placing any guards over them." The plaintiff alleged that she was free from fault and that the negligence of Owen in permitting said convicts to roam the roads of this county and State at large without any guard was the proximate cause of the injury. The question before this court is whether the petition set forth a cause of action against the warden.

After a diligent study of the petition we reach the conclusion that the only act of negligence on the part of the warden disclosed in the petition was "in permitting said convicts to roam the roads of this county and State at large, without any guard."

The power and duty to exercise judgment and discretion is not conferred alone on public officers who sit as judges. There are a large number of such officers whose duties lie wholly outside the domain of courts of justice. To distinguish them from judicial powers, such powers are termed quasi-judicial or discretionary, as they are said to lie midway between judicial and ministerial ones. The name of the officer or officers is immaterial, and the question depends on the character of the act. If the act done for which recovery is sought is judicial or quasi-judicial in its nature, the officer acting is exempt from liability. Mechem on Public Officers, 420, §§ 636, 638. For reasons of private interest and public policy a quasi-judicial officer can not be called on to respond in damages to a private individual for the honest exercise of his judgment within his jurisdiction, however erroneous or misguided his judgment may be, "for their authority is fixed by laws which those who deal with them are as much bound to know as are the officers themselves. Otherwise, not only would it be difficult to get responsible men to fill public office, but there would be constant temptation to yield officially to unlawful demands, lest private liability be asserted and enforced. But, although officers, they may not be rascals, and liability may arise for tortious conduct. In matters of ministerial duty they may even be liable for nonfeasance as well as misfeasance,

for mistakes and neglects (11 Cyc. 410; Amy v. Supervisors, 11 Wall. 136, 20 L. ed. 101) ; but in matters of judgment and discretion they are liable only if they act wilfully, corruptly, or maliciously (11 Cyc. 411)." Commercial Trust Co. v. Burch, 267 Fed. 907, 909; *Tucker* v. *Shorter,* 17 *Ga.* 620; *Ghent* v. *Adams, 2 Ga.* 214, 216. This exemption from personal liability extends to wardens in their act in permitting convicts to go at large. Mechem on Public Officers, 424, § 639.

In this State, "All convicts, whether sentenced for felony or misdemeanor crimes, and all convict camps [now public-works camps] shall be under the direct supervision of the Prison Commission, which shall provide rules and regulations for the management, discipline, and control of said convicts, and of said convict camps, subject to the approval of the Governor. The Commission shall have complete management and control of the State convicts; shall regulate the hours of their labor, the manner and extent of their punishment, the variety and quantity of their food, the kind and character of their clothing; and shall make such other rules and regulations as will assure their safekeeping and proper care." Code, § 77-313. In addition, the statute provides: "The Commission shall appoint such wardens and guards as may be necessary, and shall define their duties." Code, § 77-307. And further provides: "All wardens . . shall be required to take an oath to perform their duties under the law and the rules of the Commission, before entering upon the discharge thereof." Code; § 77-311.

Thus, the warden of a public-works camp, under authority from the Prison Commission has the charge and custody of the camp, its buildings, tools, trucks, implements, and all other property pertaining thereto and it is his duty to superintend the internal police and discipline of the camp as required by the general rules, regulations, etc., prescribed by the Commission. It seems to us that the statute invests the Prison Commission, and through it, the warden, with a discretion as to the superintendence and control of the public-works camps and the convicts confined therein. The Commission is authorized to make such rules and regulations as they may deem expedient and proper for the good government thereof, and thus there is at least an implied authority given the warden, during daylight, to employ convicts outside the bounds of the camps in cutting and hauling wood (in the truck) from certain farms near

the camp to the camp. How or in what manner convicts employed outside the confines of the camp shall be permitted to go at large is nowhere specified by the law, but is left to the wise discretion and control of the Commission, and through it, the warden.

The language and reasoning in Schoettgen v. Wilson, 48 Mo. 253, 257, is so peculiarly applicable to the instant case that we quote in full the following: "Officers acting within the scope of their jurisdiction and in pursuance of discretionary powers devolved upon them, will not ordinarily be held responsible for an error of judgment. Discretion implies to a certain extent judicial functions; and where an officer acts in such a capacity, to render him personally liable it must be shown that his decisions were not merely erroneous, but that he acted from a spirit of wilfulness, corruption and malice; in other words, that his action was knowingly wrongful, and not according to his honest convictions in respect to duty. (Reed v. Conway, 20 Mo. 22; Pike v. Megoun, 44 Mo. 491; Caulfield v. Bullock, 18 B. Mon. 494). In the well-known case of Wilkes v. Dinsman, 7 How. 89 [12 L. ed. 618], the Supreme Court of the United States held that an officer invested with certain discretionary powers could not be made answerable for any injury when acting within the scope of his authority and not influenced by malice, corruption or cruelty—that his position was at least *quasi* official; and it has often been decided, and appears to be well settled, that the acts of a public officer, on public matters within his jurisdiction, and where he has a discretion, are to be presumed legal until shown by others to be unjustifiable. Gidley v. Palmerston, 7 Moore, 111; Vanderheyden v. Young, 11 Johns. 150; Martin v. Mott, 12 Wheat, 31) [6 L. ed. 537]. This is not on the principle merely that innocence and rightdoing are to be presumed until the contrary is shown, but that the officer, being intrusted with a discretion for public purposes, is not to be punished for the exercise of it, unless it is first proved against him either that he exercised the power confided in cases without jurisdiction, or in a manner not confided to him, as with malice, cruelty or wilful oppression, or, in the words of Lord Mansfield, that he exercised it as if the heart were wrong. (Wall v. McNamara, 2 Carr. & P. 158, and note.) In Jenkins v. Waldron, 11 Johns. 121 [6 Am. D. 359], Spencer, J., speaking for the whole court says: 'It would, in our opinion, be opposed to all the principles of law, justice and sound policy, to

hold that officers called upon to exercise their deliberate judgments are answerable for a mistake in law, either civilly or criminally, when their motives are pure and untainted with fraud and malice.'" Our Supreme Court, in *Henderson* v. *Dade Coal Co.,* 100 *Ga.* 568 (28 S. E. 251, 40 L. R. A. 95), has said: "As a general rule, persons in charge of a State convict, whether their custody and control of him be lawful or otherwise, are not liable in damages for a criminal tort committed by him while at large, although his being at large was by their permission, or because of their negligence in failing to keep him safely confined. Ordinarily, under such circumstances, the convict's wrongful act would be too remote a consequence of his keepers' misconduct in the premises to render them responsible to the person injured. This rule would, of course, be varied if they were in any way connected with the perpetration of the tort, or had reasonable grounds for apprehending that it would be committed."

The allegation of negligence here is that the defendant warden was negligent "in permitting said convicts to roam the roads of this county and State at large, without any guard." We have seen that under the statute with reference to the regulation and control of convicts it is not unlawful, in the exercise of his discretion, for the warden to employ convicts outside of the public-works camps, for the statute at least grants implied authority for the warden so to do. The warden was the only person who could control them when they were laboring outside. If the warden, acting in good faith, merely erred in judgment, in not adopting rules sufficiently stringent for the government and control of the convicts (as for instance sending a guard along when they were employed outside the camp during daylight hours), he would not on that account be held answerable. To hold him liable it would be necessary to allege and prove that he had been guilty either of wilfulness, fraud, malice, or corruption; or that he had knowingly acted wrongfully, and not in accordance with his honest convictions of duty. There is nothing in the petition to show that the defendant warden acted without the sphere of his jurisdiction, or that he acted wilfully, fraudulently, or maliciously in disregard of the rights of others. Were such the case, there would be no doubt as to his liability, but under the facts alleged we think the petition was defective and was properly dismissed on demurrer.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*