## 61337. GRAY v. LINAHAN et al.
## 61338. PREVATT v. LINAHAN et al.

BANKE, Judge.

While serving time as inmates of the Georgia Women's Correctional Institution, the plaintiffs, Patricia Gray and Joyce Prevatt, were attacked and injured by Dessie Woods, another inmate there. They filed suit against the warden and three subordinate officials of the institution, charging that each "knew, or (in the ordinary course of their duties) should have known, that Desi (sic) Woods is a dangerous person, she having committed numerous acts of violence against other persons in the course of her incarceration . . ." They further charged that the defendants' failure to protect them from Woods amounts to a "total and utter disregard for their safety" for which the defendants were liable in damages. These appeals are from an order granting defense motions for summary judgment.

The attack occurred shortly after the plaintiffs had returned to their dormitory from a meeting with defendant Mark Martin, the assistant warden for security. Inmate Woods lived in the same dormitory. The plaintiffs had met with Martin for the purpose of complaining to him about Woods' use of abusive language towards themselves and other residents there, and while they were waiting to be received, Woods was brought before him in connection with a disturbance which she had just caused in the prison mess hall. After hearing about that incident, Martin merely sent Woods away with a reprimand; however, after hearing the plaintiffs' complaint, he decided to place her in "administrative segregation."

The evidence is somewhat in conflict as to whether, upon being told by Martin that Woods would be placed in segregation, the plaintiffs expressed any fear of a reprisal. In her deposition, Joyce Prevatt testified that she warned Martin that there would be trouble if he made them go back to their quarters and that he responded, "Give me twenty minutes, and I'll have her out of there. Nothing can happen in twenty minutes." Patricia Gray's testimony is consistent with this account. Martin, on the other hand, testified that the plaintiffs never expressed any fear of returning to their quarters and that, when he asked them if they could "wait" or "hold off" for twenty minutes (meaning could they avoid any problems with Woods for that long), they responded in the affirmative. In any event, it is undisputed that neither plaintiff expressed any hesitation about returning to the dormitory *after* Martin told them that he would have Woods out of there in twenty minutes.

When the plaintiffs returned to the dormitory, Woods confronted them about their visit to Martin and accused them of

telling him lies about her. Shortly thereafter, a guard informed her that she was being placed in administrative segregation and ordered her to collect her belongings. She went unaccompanied to her room, removed from her clothes locker a metal bar designed for hanging clothes, walked up behind Gray, who was in the bathroom washing out a coffee cup, and hit her over the head several times with the bar. Hearing Gray's screams, Prevatt rushed to her aid and was herself struck with the weapon.

Metal bars such as the one Woods used to assault the plaintiffs were standard equipment in the inmates' clothes lockers. At the time of this incident, the bars were unsecured and could be easily removed. They have since been welded into place.

Both Martin and his boss, Warden Leland Linahan, were asked on deposition whether there had been any previous reports of physical violence by Woods against other inmates, and both responded in the negative. Although the plaintiffs testified that they had heard of numerous such incidents, they were able to testify directly about only one, an episode wherein Woods allegedly hit an elderly inmate in the face with a plate at the mess hall. There is no evidence that this incident was ever reported.

In this appeal, the plaintiffs contend that the evidence would authorize a jury to hold the defendants liable on two grounds: (1) Because they failed to place Woods under guard immediately upon informing her that she was being sent to administrative segregation; and (2) because they failed to secure the metal bars inside the lockers prior to this incident. *Held:*

"It is a well-established principle that a public official who fails to perform purely ministerial duties required by law is subject to an action for damages by one who is injured by his omission. However, it is equally well established that 'where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption.' [Cit.]" *Gormlay v. State,* 54 Ga. App. 843, 847-848 (189 SE 288) (1936). See also *Hennessy v. Webb,* 245 Ga. 329, 330 (264 SE2d 878) (1980); *Partain v. Maddox,* 131 Ga. App. 778, 781-782 (206 SE2d 618) (1974).

The omissions complained of in this case cannot reasonably be classified as failures to perform purely ministerial duties; rather, each was the product of an exercise of judgment in an area which was well within the scope of the defendants' authority and responsibility as

prison officials. It follows that they cannot be held liable for the plaintiffs' injuries in the absence of evidence that they acted in a spirit of wilfulness, maliciousness, or corruption. Compare *Mathis v. Nelson,* 79 Ga. App. 639 (54 SE2d 710) (1949). However, all of the evidence in the record is to the contrary. Both Warden Linahan and Assistant Warden Martin testified that they knew of no prior incidents of violence by Woods against other inmates, and the plaintiffs have produced nothing which would authorize an inference to the contrary. Furthermore, it appears without dispute that Martin sought to avoid a disturbance between Woods and the plaintiffs by making prompt arrangements to remove her from the dormitory and that neither plaintiff gave him any reason to doubt his mistaken assurance to them that "[n]othing can happen in twenty minutes." Indeed, the plaintiffs were themselves apparently expecting no immediate violence in view of the element of surprise with which Woods was able to mount her assault. Similarly, all of the evidence with respect to the metal bars indicates that the defendants were operating under a good faith belief that the bars were not likely to be used as weapons. Thus, we hold that the trial court was correct in concluding as a matter of law that the defendants did not act in a spirit of wilfulness, malice, or corruption, or in total disregard for the plaintiffs' safety. The court was accordingly correct in granting summary judgment to the defendants. Accord, *Price v. Owen,* 67 Ga. App. 58 (19 SE2d 529) (1942).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED JANUARY 27, 1981 —

*Timothy J. Warfel,* for appellant.

*Arthur Bolton, Attorney General, Robert S. Stubbs II, Executive Assistant Attorney General, Don A. Langham, First Assistant Attorney General, John C. Walden, Senior Assistant Attorney General, Harrison Kohler, Assistant Attorney General,* for appellees.