### 69801. SHUMAN v. DYESS et al.
(333 SE2d 379)

BEASLEY, Judge.

This is a personal injury suit arising out of a collision in Chatham County between a motorcycle and a county-owned tractor-trailer. The issues on appeal involve the county's governmental immunity.

Appellant Shuman was injured on September 2, 1981, when his motorcycle collided with a "lowboy" driven by appellee Dyess, a Chatham County public works employee and specifically a heavy equipment operator, who at the time of the incident was transporting a county-owned bulldozer for repair. Shuman sued Dyess, the county, and the county commissioners alleging negligence on the part of Dyess and imputed negligence as to the remaining defendants. Shuman's uninsured motorist insurance carrier, Cotton States Mutual Insurance Company, was permitted to intervene as a defendant.

All defendants moved for summary judgment. Cotton States' motion was denied, and that of the remaining defendants, based on governmental immunity, was granted. The injured motorcyclist appealed. Cotton States did not appeal but supports plaintiff's position in this court.

1. Appellant maintains that the trial court erred in granting the county summary judgment on the ground that a question of fact exists as to whether the county, a political subdivision of the state, was self-insured and thus waived its governmental immunity.

The question of fact arises, appellant maintains, because the state tag receipts for this and all other county vehicles[1] state in the box entitled "Name of Insurance Co." the words "Self Insured." The tag receipt, which was signed presumably by a county employee, was kept above the sun visor of the vehicle. There is no evidence whatsoever, nor any contention, that the governing authorities of the county elected to secure and provide any type of insurance for its vehicles as the county was authorized by statute to do. OCGA § 33-24-51. Nor is there any evidence or contention that the governing authorities applied for a certificate of self-insurance pursuant to OCGA § 40-9-101 or that one was issued by the Department of Public Safety, as pro-

---

[1] The county attorney signed a stipulation to the effect that the "certificate of title" for this and all other county vehicles showed the county as self-insured, but apparently he meant instead the tag receipt similar to the one in evidence. Appellant bases his argument only on the tag receipt designation and makes no reference to the certificates of title.

vided by that Code section. The injured party, and his uninsured motorist carrier, simply argue that the statements amount to an admission and that the county is therefore precluded from denying that it is self-insured.

However, the law defines a "self-insurer" as "any owner who has on file with the commissioner of public safety an approved plan of self-insurance which provides for coverage, benefits, and efficient claims handling procedures substantially equivalent to those afforded by a policy of automobile liability insurance that complies with all of the requirements of this chapter [Title 33, Chapter 34; Georgia Motor Vehicle Accident Reparations Act]." OCGA § 33-34-2 (12). Non-compliance with these provisions renders one not a self-insurer in the eyes of the law. *Commercial Union Ins. Co. v. Ins. Co. of North America,* 155 Ga. App. 786, 788 (273 SE2d 24) (1980). The legal steps not having been taken to render it self-insured, the county was not, as a matter of fact, self-insured. Whether the mistake of fact which appeared from the tag receipts was due to the misunderstanding of the legal meaning of the term by the document's signer or was simply a designation to show that proof of insurance did not have to be given as a condition of the tag's issuance (see OCGA § 40-2-33) or was an effort to explain the absence of an insurance company name, is of no moment. The point is that the signatory's saying so did not make it so. A mistaken statement of fact cannot become a true statement of fact by its mere utterance, yet that is the foundation of appellant's position. The "admission" which he says bound the county did nothing more than "admit" an inaccuracy. An admission is an acknowledgment of something that is asserted, the acquiescence or concurrence in the truth of an allegation. It does not have the office of creating or originating that assertion, however. Here, the statement falls far short of creating a waiver of sovereign immunity, which must be done as provided by law. Generally, an admission of liability where none exists, and an offer to adjust a demand not legally enforceable, does not of itself create legal liability. *Cook v. Brown,* 23 Ga. App. 284 (98 SE 92) (1918).

Moreover, that waiver would be only to the extent of the amount of the insurance, OCGA § 33-24-51 (b), and the judgment could not exceed the limits or coverage of the insurance. OCGA § 33-24-51 (c); *Dowling v. Camden County,* 113 Ga. App. 34, 35 (146 SE2d 925) (1966). Plaintiff would have the court construe the county's actions identified here, as creating an unlimited waiver and thus an unlimited liability separate and apart from the self-insurance law. We cannot judicially fashion such an imposition of liability which would obviate the careful legislatively-provided regulatory procedure for granting self-insurer status after an executive agency review and exercise of discretion. Nor can we so cavalierly set aside the government's sover-

eign immunity. "A county is not liable for suit for any cause of action unless made so by statute." OCGA § 36-1-4. See *Miree v. United States*, 242 Ga. 126, 133 (249 SE2d 573) (1978); *Johnson v. Chatham County*, 167 Ga. App. 283, 284 (306 SE2d 310) (1983).

The trial court did not err in granting summary judgment to the county and its commissioners.

2. Shuman further contends that the trial court erred in its grant of summary judgment to the county's employee, Dyess, on the ground that Dyess was performing a non-discretionary act and hence not shielded by governmental immunity.

While a county is protected from suit unless made available by statute (OCGA § 36-1-4), a different analysis applies to determine liability on the part of the county's employee. The issue here is whether the county's immunity extends to its agent, Dyess, in carrying out his duties for the county.

Dyess is being sued not because he is an agent or employee of the state, that is, not in his official capacity, but rather in his personal capacity because he allegedly committed acts of negligence which happened to occur during the performance of his job and within the scope of his employment. "A suit against a State officer or agent as an individual is not one against the State. Consequently, where State officers or agents are sued personally, the suit is generally maintainable. . . . This is true even though the State officers or agents, when thus sued personally, may seek to claim immunity from suit or an absence of liability because of alleged ownership by the State of the property involved, or because they may claim a performance of the questioned acts as officials acting under legal authority." *Florida State Hosp. v. Durham Iron Co.*, 194 Ga. 350, 353 (21 SE2d 216) (1942); see also *Irwin v. Arrendale*, 117 Ga. App. 1, 2 (159 SE2d 719) (1967).

The test for determining liability of a public official or agent acting in his public capacity is not that applied to counties but is rather whether or not the complained of act was discretionary (quasi-judicial) or ministerial in nature.

"Damage suits are maintainable in this state against government officers and agents for failure to perform ministerial duties, but such officers and employees are immune from negligence claims when the acts complained of involve a discretionary function of an office. *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980) . . . The decision of whether acts of a public official are ministerial or discretionary is determined by the facts of the particular case. Compare *Mathis v. Nelson*, 79 Ga. App. 639 (54 SE2d 710) (1949), with *Price v. Owen*, 67 Ga. App. 58 (19 SE2d 529) (1942)." *Nelson v. Spalding County*, 249 Ga. 334, 336 (290 SE2d 915) (1982); *Dillard v. Fussell*, 160 Ga. App. 382, 383 (287 SE2d 96) (1981). See also *Counihan v. Dept. of Transp.*,

162 Ga. App. 374 (290 SE2d 514) (1982).

"[I]n Georgia the distinction between a ministerial and a discretionary act, and therefore the scope of the immunity granted a public official in any given situation, turns upon the specific character of the complained-of act, not the more general nature of the job. *Partain v. Maddox,* [131 Ga. App. 778, 783 (206 SE2d 618) (1974)]; *Price v. Owen,* [supra]. Under this standard it makes no difference that the official is required to perform discretionary acts if the complained-of act is more properly characterized as ministerial. This grant of qualified immunity, then, is really more in the nature of a transitory privilege rooted in the fear that a contrary rule would inhibit the judgment upon which good government rests. The single overriding factor is whether the specific act from which liability allegedly arises is discretionary or ministerial." *Miree v. United States,* 490 FSupp 768, 773 (1980).

In this case, there has been no allegation of negligence in selection of the truck's route or time of travel, which could conceivably be characterized as a quasi-judicial or discretionary act. See *Hennessy v. Webb,* supra, at 331. Rather, Shuman alleges the negligent act or failure to act on the part of Dyess in operating the "lowboy" as the proximate cause of injury. Many of these alleged acts or omissions are violations of OCGA Title 40, Chapter 6, the Uniform Rules of the Road, which are binding on those who operate vehicles upon the highways of this state.

Dyess, at the time of the incident, was not making any manner of policy decision as to the repair of the bulldozer, but was merely engaged in the performance of the mechanical task of transporting the disabled vehicle to the repair shop. See *Mathis v. Nelson,* supra. By this, we do not mean to imply that Dyess would not have to exercise the judgment required of any driver in the safe operation of his vehicle; of course he was bound to follow the traffic laws like others. But this did not involve quasi-judicial decision-making. His particular task of driving was not invested with such discretion as would invoke or compel or warrant the cloak of governmental immunity to insulate the activity from alleged actionable negligence in carrying out the assignment which was part of his function as a county employee. See *Hennessy v. Webb,* supra. He had no discretion or governmental decision-making authority with regard to the manner of his operating the tractor-trailer. It had to be done in compliance with the rules of the road. The sovereign, acting through its agent, had no option in the circumstances to drive in any manner other than in compliance with the legal duties imposed on all drivers. This was not a governmental act, where the choice of how to do it is left with those duly vested with the power of government to make the judgment. The fact-finder cannot second-guess the judgment made, in those situations.

Thus the trial court erred in granting summary judgment to appellee Dyess on the basis of governmental immunity.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 24, 1985.

*Thomas C. Bordeaux, Jr.,* for appellant.
*Oliver Hunter, Morton G. Forbes,* for appellees.