### 76405. HOLSEY v. HIND.
(377 SE2d 200)

BANKE, Presiding Judge.

Appellant Holsey filed an action for damages against appellee Hind, the District Attorney of Dougherty County, Georgia, alleging that Hind's office had caused him to be held in jail for 40 days without cause by failing to notify him or his attorney that certain criminal charges against him had been dead-docketed. Holsey appeals from the grant of Hind's motion for summary judgment.

The appellant was arrested on May 23, 1985, based on warrants charging him with arson and murder. The following day, an assistant district attorney in the appellee's office presented a written motion to a Dougherty County superior court judge asking that the charges be placed on the "dead docket" (see generally OCGA § 15-6-61 (4) (G)), for the stated reason that there was "insufficient evidence to convict at this time." The trial judge granted the motion, but neither the jail officials, the appellant, nor his criminal defense attorney became aware of this development until July 3, 1985, on which date the appellant's criminal defense counsel learned that the charges were no longer pending and immediately obtained the appellant's release from custody.

The appellant contends that the district attorney's office was under a statutory duty pursuant to OCGA § 17-1-1 to serve him or his attorney with a copy of the motion and order dead-docketing the charges but that it was the appellee's custom and practice not to require his assistants to comply with this statutory duty. The appellee denies these allegations but asserts that even if they are true, he is insulated from liability for any resulting injury to the appellant pursuant to the doctrine of prosecutorial immunity. *Held*:

1. " 'The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties.' *Im-*

bler v. Pachtman, 424 U. S. 409, 422 (96 SC 984, 47 LE2d 128) (1976). Prosecutors, like judges, should be free to make decisions properly within the purview of their official duties without being influenced by the shadow of liability. Therefore, a district attorney is protected by the same immunity in civil cases that is applicable to judges, *provided that his acts are within the scope of his jurisdiction.*" *Smith v. Hancock*, 150 Ga. App. 80, 81 (256 SE2d 627) (1979). (Emphasis supplied.)

Not all actions undertaken by the district attorney in carrying out the functions of his office are considered "within the scope of his jurisdiction" as the prosecuting officer of the court. It appears to be well-settled that "[a]lthough a prosecutor enjoys absolute immunity when engaging in quasi-judicial functions, he has only a qualified immunity when carrying out administrative or investigative functions." *Kadivar v. Stone*, 804 F2d 635, 637 (11th Cir. 1986), citing *Marrero v. City of Hialeah*, 625 F2d 499, 504-05 (5th Cir. 1980). Thus, our initial concern in this case is within the threshold question of whether the alleged breach of duty involved a "quasi-judicial" or merely an administrative function of the district attorney's office.

This issue cannot be resolved merely by inquiry into whether the alleged breach of duty involved an exercise of judgment or discretion on the part of the appellee or his assistants. No one, for example, would seriously contend that a decision by a prosecutor on such a matter as hiring or firing a secretary would be anything other than administrative, although such a decision would obviously involve an exercise of judgment or discretion connected with the duties of his office. The determining factor instead appears to be whether the act or omission is " 'intimately associated with the judicial phase of the criminal process.' " *Barbera v. Smith*, 836 F2d 96, 99 (2d Cir. 1987), citing *Imbler v. Pachtman*, supra, 424 U. S. at 430-431.

Pursuant to this rationale, we conclude that although the failure to serve the appellant or his counsel with a copy of the motion and order resulting in the dead-docketing of the charges may not have involved the exercise of any prosecutorial discretion or judgment, such conduct, being intimately associated with the judicial phase of the criminal process, was nevertheless within the scope of the appellee's absolute prosecutorial immunity. Accord *Atkins v. Lanning*, 556 F2d 485 (10th Cir. 1977) (holding district attorney immune from liability for mistake in causing wrong person to be named in arrest warrant). We accordingly hold that the trial court did not err in granting the appellee's motion for summary judgment.

2. The appellant's remaining enumeration of error, involving the trial court's grant of a protective order preventing discovery in the case, is rendered moot by the foregoing.

*Judgment affirmed. Deen, P. J., McMurray, P. J., Sognier, Pope*

*and Benham, JJ., concur. Birdsong, C. J., Carley and Beasley, JJ., dissent.*

BIRDSONG, Chief Judge, dissenting.

Appellant Holsey sat in jail for 40 days because the appellee, for reasons known to him, failed to authorize the appellant's release.

The majority of this court thinks he has no redress for this under our system of American jurisprudence.

The majority decision states the district attorney had no duty to prevent this unauthorized imprisonment, notwithstanding the mandatory provisions of OCGA § 15-18-6 (10) making it his special duty to perform the notification duties required by law at § 17-1-1. The majority in its decision states the appellee is immune from any action for his having allowed Holsey to remain in jail for 40 days as this clearly was "intimately associated with the judicial phase of the criminal process. [Cit.]" This finding ignores one of the law's basic precepts, "ignorantia eorum quae quis scire tenetur non excusat. Ignorance of those things which one is bound to know excuses not." Black's Law Dictionary.

How can this be? How can it be said that to imprison a man for 40 days without cause in direct violation of a statutory mandate which would have prevented this incarceration, is an act "intimately associated with the judicial process?" If the criminal prosecution is ended, then there is no "judicial process" pending. For 40 days there was no judicial process of prosecution against Mr. Holsey. There is no acceptable excuse for this injustice, and there is no law or rule of law which gives a prosecutor the insidious power to do this sort of thing by shielding him with immunity.

I have no quarrel whatever with the principles of sovereign, and particularly, judicial immunity, *for acts of judicial discretion* and acts "intimately associated with the judicial process"; but this was not one of them.

"It is a well-established principle that a public official who fails to perform purely ministerial duties required by law is subject to an action for damages by one who is injured by his omission. However, it is equally well established that 'where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as a result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority.' These discretionary acts 'lie midway between judicial and ministerial ones. The name of the public officer or officers is immaterial, and the question depends on the character of the act. If the act done for which recovery is sought is judicial or quasi-judicial in its nature, the

officer acting is exempt from liability.' " *Hennessy v. Webb*, 245 Ga. 329, 330 (264 SE2d 878); quoting *Partain v. Maddox*, 131 Ga. App. 778 (206 SE2d 618); and see *Nelson v. Spalding County*, 249 Ga. 334 (290 SE2d 915).

This rule serves a good public policy. While the Georgia courts have not dealt much with the peculiar nature of *prosecutorial* immunity, the federal courts, particularly in the realm of suits filed under 42 USC § 1983, have done so. The principles and policies underlying each are the same; but in matters of indicted or prosecutorial nature, the freedom to act with *independent* discretion is the refining element.

In *Imbler v. Pachtman*, 424 U. S. 409 (96 SC 984, 47 LE2d 128), the United States Supreme Court established that among the "reasons for absolute immunity" is the overriding public policy necessity that the prosecutor, like judges, be completely free to perform his duties without the concerns of harassment and influence. " 'The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? . . . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded and we would have moved away from the desired objective of stricter and fairer law enforcement.' [Cit.]" Id., pp. 423-424.

The policy objects announced in *Imbler* are not only good, but are essential to the integrity of police power in a free society, so much so that it is a part of the State Constitution that "District Attorneys shall enjoy immunity from private suit for actions arising from *the performance of their duties.*" Constitution of the State of Georgia, Art. VI, Sec. VIII, Par. I. (Emphasis supplied.) With this provision I firmly agree. But the district attorney is given no constitutional or other protection from the *non-performance of his statutory, mandatory, non-discretionary acts* which are not judicial or quasi-judicial in character. *Imbler* held only "that in *initiating a prosecution and in presenting the State's case*, the prosecutor is immune from a civil suit for damages. . . ." (Emphasis supplied.) Id., p. 431.

The appellee argues that the *decision to dismiss a case* is not a ministerial function but is a judicial act or, at least, a quasi-judicial act entitled to qualified, good-faith immunity. But in this case the decision to dismiss had already been made and no more discretion remained. Only the ministerial act of releasing the prisoner remained. The inquiry underlying the issue of immunity depends upon the *"functional nature of the activities* rather than [the prosecutor's] status." *Imbler*, supra, p. 430; *Marrero v. City of Hialeah*, 625 F2d 499,

504 (5th Cir. 1980). Thus, the mere status of being district attorney gives no immunity *for non-performance of his statutory mandatory duties*, notwithstanding anything given to him by the Georgia Constitution for the *"performance of his duties."* The status of the officer is immaterial; "the question depends on the character of the act." *Hennessy*, supra at 330-331. Hence, the critical issue is whether the act was judicial or quasi-judicial (discretionary) or ministerial (not discretionary.)

As *Marrero*, supra, makes clear, it is only the overriding public policy which necessitates and allows prosecutorial immunity in the first place, and "although the *Imbler* [absolute immunity] umbrella may be necessary to shield a prosecutor from a rain of private suits challenging the performance of his quasi-judicial duties, *there simply is no reason to construct a canopy to cover a prosecutor's activities which lie outside his role as advocate."* (Emphasis supplied.) Id., p. 510.

In all due respect to the majority's opinion, it cannot possibly be said that the unlawful imprisonment of Holsey, by reason of the appellee's failure to perform the statutory, ministerial, mandatory *non-discretionary* act of notifying him that he was no longer charged with any crime, was an act "intimately associated with the judicial phase of the criminal process." There was no more "judicial phase." There was no more "criminal process." The discretionary, judicial or quasi-judicial act of deciding whether to drop criminal charges had already been done.

There was no more discretion to exercise in the matter, as there was in the cases cited by the majority. The law demanded Holsey's release from jail. The public policy that provides absolute or qualified immunity for judicial and quasi-judicial acts is the good public policy of ensuring the independence of the jurisprudential process, and the integrity of police powers in our society. But there is no conceivable good public policy, lurking in the guise of such immunity, that could give the prosecution the power to imprison a citizen when there is no criminal action pending against him.

The only result of contrary thinking is the destruction of the integrity of the police power in this State, and in the jurisprudential system. No good can come of it. It is wrong. To deny immunity for unlawful imprisonment resulting from failure to perform a statutory, *non-discretionary* act, does not make the slightest scratch on the face of the good policy which allows immunity for a discretionary judicial or quasi-judicial prosecutorial act. Particularly in this case, denying immunity does not threaten that good policy. *It strengthens it* by leaving its integrity undiluted by false notions that a public officer's mere status sets him above the law. The majority conclusion posits an interesting question. If a district attorney "forgets" to authorize the

release of a prisoner, where charges have been dismissed or not processed for a period of three or four or five years, would we reach the same result? If not, why not? The legal principles remain the same.

With full respect for the opinion of the majority, I say the statutory, mandatory *non-discretionary* requirement to notify Holsey that there was no criminal prosecution against him, is entitled to no prosecutorial, governmental, judicial, or quasi-judicial immunity whatsoever; and further, to say that the act of leaving the appellant in jail for 40 days is entitled to some immunity, places an ineradicable blotch upon the integrity of the entire public policy underlying government and judicial immunity, by placing the judicial officer or prosecutor above the law, by reason of his status alone.

I therefore respectfully, but strongly, dissent.

BEASLEY, Judge, dissenting.

I respectfully join the dissent in the conclusions that the failure to perform a statutory administrative duty is involved, that the district attorney cannot escape responsibility by delegation of performance to a subordinate, and in the conclusion that the summary judgment was error. I cannot concur in the application of federal immunity doctrine or with the conclusion that the inactions complained of are outside the prosecution of a case.

First we must determine the nature of the tort claimed and its requisites, or we apply the wrong immunity doctrine. The defendant did not contend that Georgia law does not encompass a cause of action covering plaintiff's complaint, so that issue is not before us and we must assume for the purpose of this decision that it does.

Plaintiff alleges that it is the custom and practice of defendant not to serve dead docket motions or the orders entered thereon on criminal defendants or their attorneys, as required by OCGA § 17-1-1 (a), that the failure to do so in plaintiff's case resulted in his unauthorized continued incarceration for 40 days, and that he was damaged in the amount of $2,000 per day for loss of liberty and emotional distress.

In this case, then, the tort alleged is the violation of a public duty because it is a duty imposed by a valid statutory enactment of the legislature. OCGA § 51-1-1; *Sutker v. Penn. Ins. Co.*, 115 Ga. App. 648, 651 (155 SE2d 694) (1967). The requirements of OCGA § 17-1-1 were added to the statutes in the Code of 1981. Prior to that, this provision apparently did not exist and the duties prescribed therein were not mandated by statute. The code provision defining tort, OCGA § 51-1-1, recognizes that a tort may be the violation of a public duty "if, as a result of the violation, some special damage accrues to the individual."

The essence of plaintiff's complaint is that he lost the value of his liberty and suffered compensable emotional distress because the district attorney did not serve his attorney with the dead docket motion or order. He does not claim that the inaction was reckless, or willful and wanton; he does not expressly claim that it was negligent or deliberate. He claims merely that it was a customary practice and occurred in his case. Defendant, in moving for summary judgment, offered no proof to contravene these two factual allegations.

The code provides that "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." OCGA § 51-1-6. Violation of a statute is per se a tort if " 'the injured person falls within the class of persons it was intended to protect and . . . the harm complained of was the harm it was intended to guard against. [Cits.]' " *Central Anesthesia Assoc. v. Worthy,* 173 Ga. App. 150, 153 (325 SE2d 819) (1984) [affirmed 254 Ga. 728 (333 SE2d 829) (1985)].

Thus, plaintiff asserts a claim under state law, and it is clear that he does not assert a cause of action under 42 USC § 1983. That makes the federal cases cited by the majority, and other cases grappling with the question of prosecutorial immunity from civil rights claims under that provision, non-controlling. They are dealing with an immunity granted by federal case law, and we are not. Instead, we are dealing with a state cause of action, assuming there is one, and the degree of immunity, if any, which the state as sovereign chooses to grant to the state's prosecutor. Federal cases construing and applying federal immunity may be instructive and persuasive, but they do not govern the issues here.

The distinctions between federally-provided immunity in federal suits and immunities recognized by Georgia in state suits are discussed in *Thompson v. Spikes,* 663 FSupp. 627, 640 (2) (S.D. Ga. 1987). The two doctrines take different approaches and contain different categories. Thus, the *Imbler v. Pachtman,* 424 U. S. 409 (96 SC 984, 47 LE2d 128) (1976), immunity analysis is inapplicable except to the extent that it may have been adopted in Georgia's governmental immunity law. *Imbler* is a case brought under 42 USC § 1983, as are later cases involving good faith immunity such as *Davis v. Scherer,* 468 U. S. 183 (104 SC 3012, 82 LE2d 139) (1984), reh. den. 468 U. S. 1226. As to the qualified immunity in federal suits, see also *Harlow v. Fitzgerald,* 457 U. S. 800, 817-818 (102 SC 2727, 73 LE2d 396) (1982).

The absolute versus qualified immunity doctrine which is part of federal law was recently applied in *Marx v. Gumbinner,* No. 87-5449, 11th Cir., September 20, 1988. It is in that context that the dichotomy between prosecutorial and non-prosecutorial functions is made. Such

a division, which relates to whether the complained-of action occurred "in connection with either the initiation of a prosecution or with activities undertaken in following up a prosecution," *Marrero v. City of Hialeah*, 625 F2d 499 (5th Cir. 1980), cert. den., 450 U. S. 913 (101 SC 1353, 67 LE2d 337) (1981), is unnecessary under the Georgia doctrine of immunity. If it was a duty *outside* a prosecution, it would still be within the scope of his official duties. See *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980).

Whether the failure to act occurred in the course of a case prosecution or not is not determinative of Georgia immunity. If it were, there is no doubt that the violations complained of here were in the course of prosecution. Service comes as part of the procedure of a criminal case, as the majority points out. The prosecution has not "ended" so as to fall outside the judicial process and into the sphere of prosecutorial activities which constitute non-judicial functions, such as campaigning for office or speaking to private or public groups. OCGA § 17-1-1 by its nature and scope encompasses actions to be performed, and the steps to be taken, in connection with criminal cases. It is a provision within the code title specifying the procedure to be followed in criminal cases.

The duties of the district attorney with respect to a case are not concluded when the "dead docket" order is entered. They continue, at least for the moment, until he has served notice. That is the whole point of plaintiff's lawsuit. His quasi-judicial *function* is not past the final point in this regard. For one thing, the case is not finally disposed of because the presiding judge can still call it for trial at his pleasure. OCGA § 15-6-61 (4) (G). But the law imposes a duty to perform a ministerial act within that prosecutorial function, for the district attorney is to make service as a "party" to the penal action. OCGA § 17-1-1. It is "the character of the act" which is determinative. *Hennessey v. Webb*, supra at 331.

We must only determine whether the State law grants an absolute immunity, for that was the basis of summary judgment. Of course, if it does, it nearly swallows up the cause of action entirely, for a damage suit brought for non-compliance of OCGA § 17-1-1 would always be against the public prosecutor except when brought against the defendant's own attorney.

I agree that the State does not grant an absolute immunity to the prosecutor from the suit as alleged and in the current state of the record. In *Smith v. Hancock*, 150 Ga. App. 80 (256 SE2d 627) (1979), the Court recognized the existence of a quasi-judicial immunity for prosecutors, stemming from the need to protect the prosecutor's decision-making process from the fear of civil liability. This need is considered greater than the need to provide redress for harmful error. Considering the rationale for the immunity, it would not apply to

statutorily-mandated acts because there is no room for validly deciding not to comply. No discretion is allowed. No prosecutorial judgment enters in. Such acts are not "quasi-judicial." The code says do it; the freedom to make an untrammeled determination has been removed by the law itself, i.e., the enactment of OCGA § 17-1-1. "[A] suit may be brought against a State officer or agent where he acts illegally and in an unauthorized manner." *Cannon v. Montgomery*, 184 Ga. 588 (2) (192 SE 206) (1937).

While it is true that the district attorney has complete discretion on whether to seek dead docketing, and such a decision would be absolutely immune, the same is not true regarding service of the motion and any order entered thereon. The latter two, which require merely ministerial acts, are the focus of plaintiff's complaint.

Although OCGA § 17-1-1 never once states *who* is to serve the motion and the order, it is obvious that as in other cases, the obligation to serve the motion would be the movant's. But the motion would not secure defendant's release. It is the judge who has control of whether or not a case shall be so treated. OCGA § 15-6-61 (4) (G) provides for the dead docket, "to which cases shall be transferred at the discretion of the presiding judge and which shall only be called at his pleasure."

The judge's order would thus constitute the authority of the jailer to release the defendant, and the court could compel obedience to that order. OCGA § 15-1-3 (3). Although a mandatory duty to notify the attorney of the order lies also with the judge, OCGA § 15-6-21 (c), the scheme laid out in OCGA § 17-1-1 must be construed to impose a duty of service of "every order not entered in open court" on the party procuring it. That would be the district attorney in this case. The party is the State, and it can act only through its representative. Thus there was a duty; causal connection is a separate element which plaintiff must prove. See *Central Anesthesia Assoc.*, supra, 254 Ga. at 730.

There is no absolute immunity provided by Georgia for this ministerial act. As to Georgia's doctrine and the dichotomy between discretionary and ministerial acts which controls the application of immunity, see *Hennessey v. Webb*, supra; *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982); *Gray v. Linahan*, 157 Ga. App. 227, 228 (276 SE2d 894) (1981); *Shuman v. Dyess*, 175 Ga. App. 213, 215 (2) (333 SE2d 379) (1985).

I have found no case acknowledging the existence of a qualified or limited immunity which would apply to a prosecutor's ministerial acts. Instead, assuming he failed to comply with the notice duty imposed by a law aimed at the orderly and due administration of criminal cases, then the reasons he did not serve the motion and the order may be relevant to a defense.

In any event, the grant of summary judgment on the basis of absolute immunity was at best premature.

DECIDED DECEMBER 5, 1988 —
REHEARING DENIED DECEMBER 19, 1988 — 

James N. Finkelstein, for appellant.
Michael J. Bowers, Attorney General, John C. Jones, Daryl A. Robinson, Senior Assistant Attorneys General, for appellee.