A96A1374. PERKINS et al. v. MORGAN COUNTY SCHOOL DISTRICT et al.

(476 SE2d 592)

RUFFIN, Judge.

Willie and Nettie Perkins sued the Morgan County Board of Education ("Board of Education"), Morgan County Schools, Superintendent James Hagin, Principal Andrew Ainslie, individual members of the Morgan County Board of Education, and vocational secretary Amy Greenway for the wrongful death of their minor daughter, Denise Perkins. The suit stems from the murder of Denise Perkins after being released from school early. The Perkins appeal the trial court's order granting summary judgment to the defendants on the basis of sovereign and official immunity. We affirm.

Viewed in a light most favorable to the Perkins, the record shows that at the beginning of the 1993-1994 school year, the Board of Education developed and implemented a School Board Policy and Procedures Handbook applicable to all students in the Morgan County School District. This handbook was distributed to all students at the beginning of the school year. Principals of each school within the Morgan County School District had the authority and discretion to develop policies and procedures necessary for the effective administration of their particular school and to set forth these school-specific policies and procedures in the form of a student handbook. Morgan County High School had such a student handbook governing the specific policies and procedures of that school.

Appellee Amy Greenway, a vocational secretary at Morgan County High School, was responsible for handling early dismissal of students. Greenway received a copy of the Morgan County High School student handbook for the school year 1993-1994. Under the

heading "Early Dismissal," the student handbook states as follows: "If a student wishes to leave school early it is expected that the parent will call and let the office know that permission has been given. Without a parent call to verify the absence the student will not be allowed to leave. Any student who is to be dismissed early must be signed out in the main office by the parents or authorized person before leaving campus unless the student drives a car to school." Greenway was instructed and understood that she had discretion to determine whether a student had to be signed out by a parent coming to the school or whether the student could be signed out based upon a parent's express authority given by telephone. In fact, Greenway estimated at least one student per day was signed out and permitted to leave the school in the same manner Denise left the school on the day of her murder.

On January 12, 1994, Greenway received three telephone calls requesting that Denise Perkins be allowed to leave school early. During the second phone call, Greenway informed the individual on the telephone that Denise could not leave unless her mother or guardian called the office. The first two telephone calls were made by individuals with a male voice. The third telephone call was from a person who identified herself as Nettie Perkins, Denise's mother. The caller requested that Denise be released from school early since there was a family emergency and Denise was needed to watch her sister's children so that her sister's husband could take her sister to the hospital. Greenway checked the school's computer records and confirmed that the name given by the caller was Denise Perkins' mother. The caller authorized Denise to be signed out of school to walk to her sister's house.

After Denise left school, she was allegedly murdered by Robert Swain at an intersection away from school property. The record is clear that appellees had no reason to believe Swain posed any threat to Denise Perkins on or before January 12, 1994. Swain was not a student at Morgan County High School on January 12, 1994, and none of the appellees ever received any information indicating or suggesting that Swain had threatened or caused harm to Denise. When Denise reported to the office to be signed out, she did not state or suggest that she was in any fear for her safety or that there was anything unusual about her mother's request that she walk to her sister's house and watch her sister's children.

The trial court, after hearing oral argument and considering all the evidence, ruled that the Board of Education and Morgan County Schools had sovereign immunity as provided in the 1991 amendment to the Georgia Constitution and that the other appellees had official immunity "because their acts, if any, were discretionary and without malice or intent to cause injury."

While the Perkins argue that summary judgment was improper as to the members of the Board of Education, Superintendent James Hagin, and Amy Greenway, they do not argue that the grant of summary judgment to the Morgan County School District, based on sovereign immunity, or to Principal Ainslie, based on official immunity, was in error. Therefore, pursuant to Court of Appeals Rule 27 (c) (2), any such contention is deemed abandoned. *Teston v. Collins*, 217 Ga. App. 829, 831 (2) (459 SE2d 452) (1995). For reasons which follow, we conclude that the members of the Board of Education, Superintendent Hagin, and Amy Greenway are immune from individual liability because their duties and acts were discretionary, not ministerial.

1. *Members of the Morgan County Board of Education and Superintendent James Hagin.* The Perkins assert that members of the Board of Education and Superintendent James Hagin are not entitled to official immunity because they failed to perform ministerial duties required of them by law. Specifically, the Perkins assert these individuals failed to perform their ministerial duty to make rules governing the early dismissal of students from school. We find no merit in this assertion.

In support of their argument, the Perkins rely on OCGA § 20-2-59, which states "[t]he county school superintendent and county board of education shall make rules to govern the county schools of their county." The Perkins contend that OCGA § 20-2-59 establishes a ministerial duty on behalf of the Board of Education members and Superintendent Hagin to make rules governing the early dismissal of students. They further contend these individuals cannot delegate their rule-making authority to the schools or principals. Therefore, they argue that since Board of Education members and Superintendent Hagin did not make rules governing the early dismissal of students, notwithstanding the fact that Morgan County High School had such rules in their student handbook, the Board of Education members and Superintendent Hagin failed to perform their ministerial duty required by law and cannot claim official immunity. The Perkins further contend that Superintendent Hagin is not entitled to immunity since he failed to enforce the Morgan County High School policy regarding early dismissal.

This case turns on whether Superintendent Hagin and members of the Board of Education were performing discretionary acts protected by official immunity or ministerial acts not shielded by official immunity. "Generally, the determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis. [Cit.]" *Wright v. Ashe*, 220 Ga. App. 91, 93 (469 SE2d 268) (1996).

The record reveals that the Board of Education members did

develop and implement policies and procedures applicable to all schools within the Morgan County School District and distributed these rules in the form of a policy and procedures handbook to all students in the school district. Thus, the Board of Education members and superintendent did *not* fail to make rules; they merely did not make a rule addressing the early dismissal of students. The Perkins' allegation that Superintendent Hagin and the Board of Education members were bound to make *all* rules relating to the county schools is wholly unsupported by any authority. Moreover, we do not agree with the characterization of this failure as ministerial. "The power here conferred [by OCGA § 20-2-59] is clearly for the benefit of the school system, and what rules, if any, should be formulated is left in *their good judgment*." (Emphasis supplied.) *King v. Wells*, 190 Ga. 776, 781 (10 SE2d 832) (1940) (this case was decided under a different Code section). As this Court noted in *Wright*, the "Georgia courts have consistently held that making decisions regarding the means used to supervise school children is a discretionary function" which is protected by official immunity. *Wright*, supra at 93-94. Therefore, the decision of the Board of Education and its members to adopt or not adopt an early dismissal rule or regulation is entirely discretionary.

The Perkins' reliance on cases involving negligence per se is inapplicable with regard to the official immunity defense. As the Supreme Court held in *Gilbert v. Richardson*, 264 Ga. 744, 753 (6) (452 SE2d 476) (1994), the official immunity rule "provide[s] immunity for the negligent performance of discretionary acts. . . ." Moreover, "[r]eview of [the Perkins'] arguments shows that [they do] not allege that [the Board of Education members themselves nor Hagin himself] negligently supervised [their daughter], but that [their] decision, i.e., [their] exercise of judgment, regarding the means used to supervise the children was negligence. Such decisions are discretionary, not ministerial. . . . Accordingly, [the Board of Education members and Hagin were] entitled to the defense of official immunity and this defense precludes consideration of the issue whether [the individuals were] negligent in the performance of [their] duties." (Citations omitted.) *Lewis v. McDowell*, 194 Ga. App. 429, 431-432 (3) (390 SE2d 605) (1990). Thus, the trial court properly granted summary judgment to Superintendent Hagin and the Board of Education members based on official immunity.

2. *Amy Greenway, Secretary.* The Perkins contend the trial court erred in finding that their suit against Amy Greenway was barred by the doctrine of official immunity. We disagree. It is clear that Greenway, as the vocational secretary for Morgan County High School, is a public agent and, as such, can be sued only in her official capacity if she (1) negligently performed a ministerial duty or (2) acted with actual malice or actual intent to cause injury while performing a dis-

cretionary function. *Teston*, supra at 830. The Perkins "did not rebut [Greenway's] contention that the acts were performed within [her] scope of authority, and on appeal [have] not contended that [her] actions were done with wilfulness, malice or corruption. Accordingly, the issue presented for our consideration is whether [Greenway's] actions were discretionary or ministerial." *Lewis*, supra at 431 (3).

The Perkins argue that Greenway negligently performed a ministerial duty imposed on her by the school handbook. We disagree. In *Wright* we rejected the contention that although creating school policies "supervising and controlling the activities of students" was a discretionary act, the simple implementation of these policies was ministerial in nature. *Wright*, supra at 93. In *Wright*, the issue was whether school officials were protected by the doctrine of official immunity when they "failed to protect Wright by not properly enforcing the school policies and not preventing him from leaving the campus during the class break." Id. Likewise, in the present case the issue is whether a school official is protected by the doctrine of official immunity when she failed to protect Denise by not properly enforcing the school's policy regarding early dismissal and allowing Denise to leave the campus. As in *Wright*, we believe monitoring, supervising, and controlling the activities of students is a discretionary action protected by the doctrine of official immunity. See also *Guthrie v. Irons*, 211 Ga. App. 502, 504 (2) (439 SE2d 732) (1993), disapproved on other grounds in *Gilbert v. Richardson*, 264 Ga. at 750.

Furthermore, we reject the Perkins' characterization of Greenway's testimony as contradictory. Her statement that she had discretion to determine the manner in which a student should be signed out is fully consistent with her statements that she was always required to follow the handbook procedures and that she, in fact, always did so. The instructions regarding her discretion were not "other guidelines" not contained in the handbook, as the Perkins contend; rather, these instructions were an explanation of the proper meaning or interpretation of the rules contained in the handbook. That is, Greenway was simply informed that the rules in the handbook, when properly construed, required her to exercise discretion as to the manner in which students were to be dismissed early from school. It is undisputed that Greenway regularly exercised her discretion to allow students to leave on foot without a parent physically signing them out in the main office. In fact, she estimated at least one student per day was signed out and permitted to leave in the same manner Denise left the school on the day of her murder. This policy is consistent with the early dismissal rule because once Greenway received permission from the parent or authorized guardian, Greenway was then an "authorized person" who could sign the student out in the main office.

Moreover, even if Greenway's testimony is construed to be contradictory, the application of the contradictory testimony rule does not lead to the conclusion that the function of dismissing students early is ministerial rather than discretionary. Although the Perkins argue that if the contradictory testimony rule is applied, Greenway's testimony must be construed against her and we must assume that she was required to follow the rules as they were written in the handbook, this contention fails to establish that the handbook, as written, imposes a "ministerial duty" and not a "discretionary duty." As the above-cited cases hold, monitoring, supervising, and controlling student activities involve discretionary decisions, even when rules regarding these activities have been promulgated. See, e.g., *Wright*, supra; *Guthrie*, supra.

Therefore, the trial court did not err in granting Greenway's motion for summary judgment based on the doctrine of official immunity.

3. In the alternative, appellees contend they are not liable to the Perkins under the theory of intervening cause. We agree. As this Court noted in *Wright*, "[i]n regard to proximate cause, the question is not whether the defendants' conduct caused the injury, but whether the causal connection between the defendants' conduct and the injury resulting therefrom is too remote to be the basis of a recovery. . . . Generally, an intervening criminal act of a third party, without which the injury would not have occurred, will also be treated as the proximate cause of the injury thus breaking the causal connection between the defendants' negligence and the injury unless the criminal act was a reasonably foreseeable consequence of the defendants' conduct." (Citations omitted.) *Wright*, supra at 94.

In order to recover in this case, as in *Wright*, the Perkins must show that not only were the defendants negligent in supervising Denise, but also that such negligence was the proximate cause of Denise's injury. Id. In this case, as in *Wright*, the victim's injury was directly caused by the criminal act of a third party. The evidence is undisputed that (1) the appellees had no reason to believe Swain posed any threat to Denise on or before January 12, 1994, and (2) none of the appellees had ever received any information indicating or suggesting that Swain had threatened or caused harm to Denise. In addition, there is no evidence in the record that any other Morgan County High School student had been assaulted after being released from school early. Based on the record, it was not foreseeable that Denise would be murdered after being released from school early. The fact that Greenway received three phone calls regarding Denise's early release does not change our decision since there is no evidence that these phone calls were in any way connected to Denise's death or Swain. Moreover, as indicated earlier, the evidence is undisputed

that Denise did not state or suggest she was in any fear for her safety or that there was anything strange about her early release when she reported to the office to be signed out.

"In the instant case, in viewing the facts in the light most favorable to the [Perkins], even if the [appellees] were negligent in their supervision and monitoring of [Denise Perkins], such conduct on the part of the [appellees] did nothing more than give rise to the occasion which made [her] injuries possible. Other unforeseeable circumstances, including the intervening criminal act of [Swain], preponderated in causing the injury to [Denise]. Thus, it appears that the defendants' conduct was, at best, a remote cause of the injuries sustained." (Citations omitted.) Id. at 95.

Accordingly, there are no genuine issues of material fact, and the defendants are entitled to summary judgment under both the doctrine of official immunity and intervening cause.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn and Smith, JJ., concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, concurring specially and dissenting in part.

I agree with the majority in holding that members of the Board of Education and Superintendent James Hagin are immune from individual liability based on official immunity, but not for the reason given. I believe official immunity protects the Board of Education and Superintendent James Hagin because these school officials complied with OCGA § 20-2-59 by endorsing Morgan County High School's rule pertaining to early dismissal of children from school. I cannot endorse, however, the majority's holding that the school's vocational secretary (Amy Greenway) was vested with discretionary power to allow the Perkins' 14-year-old child to leave campus without transportation and without being "signed out in the main office by the parents or [an] authorized person. . . ."

" ' "(I)n Georgia the distinction between a ministerial and a discretionary act, and therefore the scope of the immunity granted a public official in any given situation, turns upon the specific character of the complained-of act, not the more general nature of the job. *Partain v. Maddox*, (131 Ga. App. 778, 783 (206 SE2d 618) (1974)); *Price v. Owen*, (67 Ga. App. 58 (19 SE2d 529) (1942)). Under this standard it makes no difference that the official is required to perform discretionary acts if the complained-of act is more properly characterized as ministerial. The grant of qualified immunity, then, is really more in the nature of a transitory privilege rooted in the fear that a contrary rule would inhibit the judgment upon which good government rests. The single overriding factor is whether the specific

act from which liability allegedly arises is discretionary or ministerial." *Miree v. United States*, 490 FSupp. 768, 773 (1980).' *Shuman v. Dyess*, 175 Ga. App. 213, 216 (333 SE2d 379). This determination is made on a case-by-case basis. Id. at 215." *Swofford v. Cooper*, 184 Ga. App. 50, 52 (1) (360 SE2d 624), aff'd, 258 Ga. 143 (368 SE2d 518).

In the case sub judice, Secretary Greenway admitted that she was aware that the school's rules provide that "[a]ny student who is to be dismissed early be signed out in the main office by the [student's] parents or authorized person before leaving campus. . . ." I believe the mandatory language of this rule left no room for discretionary variance, but required Secretary Greenway to perform the ministerial task of making sure the Perkins' child was "signed out [of school] in the main office" by either the child's parents or a person authorized by the child's parents. I therefore do not agree that official immunity shields Secretary Greenway.

I also cannot go along with the majority's holding that the appellees' liability for negligent supervision of the Perkins' 14-year-old child is cut off by the intervening criminal act of the third party who killed the child because that intervening criminal act was unforeseeable. In *Wallace v. Boys Club of Albany &c.*, 211 Ga. App. 534 (439 SE2d 746), this Court rejected this defense in a case involving the alleged negligent supervision of a child who was abducted and assaulted after a child was allowed to wander alone from the safety and protection of a summer camp. This Court pertinently reasoned as follows: "In the case of negligent supervision of a child, . . . what is reasonably foreseeable is not exclusively dependent upon what is known about a specific place. The danger is not only what may happen at a specific place but what may happen to any child at any place, given that children are mobile and may, as in this case, wander away from the place where they are supposed to be if they are not adequately supervised. What is at issue in a case alleging negligent supervision of a child is whether the danger of the type of harm the child suffered was reasonably foreseeable. Accordingly, the fact that no similar act had previously occurred on or near the defendant's premises is not dispositive of the issue of whether a jury could conclude the defendant had notice that the danger of abduction and assault existed in regard to a five or six-year-old child who wandered away from defendant's premises without adult supervision." Id. at 536 (2).

DECIDED AUGUST 26, 1996 —
RECONSIDERATION DENIED SEPTEMBER 20, 1996 —

*John M. Clark, Eric E. Wyatt*, for appellants.
*Chambers, Mabry, McClelland & Brooks, Lawrence J. Hogan*,

*Beth S. Reeves, Lambert & Roffman, Allan R. Roffman*, for appellees.