A97A1890. SCHULZE et al. v. DeKALB COUNTY et al.
(496 SE2d 273)

RUFFIN, Judge.

Carmen Schulze and Albert Scales ("the plaintiffs") sued DeKalb County, the DeKalb County Board of Commissioners and two DeKalb County paramedics for injuries suffered by their minor son, Albert Scales IV ("Albert IV"). The plaintiffs alleged that as a result of the paramedics' negligence in timely failing to diagnose Schulze's pregnancy complications and transport her to the hospital prior to the birth of Albert IV, he suffered from fetal distress and perinatal asphyxia resulting in mental retardation and developmental delays. In addition to averring negligence, the plaintiffs included a breach of implied contract claim relating to the paramedics' alleged failure "to exercise a reasonable degree of care and skill in the management of the transfer of Carmen Schulze. . . ." The trial court granted the

defendants' motion to dismiss, concluding that the county was entitled to sovereign immunity and the paramedics were entitled to official immunity to the extent they had been sued in their individual capacity. The court also dismissed the plaintiffs' contract claim on sovereign immunity grounds because the purported contract was implied, not written. The plaintiffs appealed, and for reasons which follow, we affirm.

As it appears that the trial court considered matters outside the pleadings in ruling on the defendants' motion to dismiss, the motion was converted to one for summary judgment.[1] OCGA § 9-11-12; *White House v. Winkler*, 202 Ga. App. 603, 605-606 (415 SE2d 185) (1992). Accordingly, we must determine in this appeal whether, under the summary judgment standard of review, the defendants met their burden of "showing that there was no genuine issue as to any material fact and that [they were] entitled to judgment as a matter of law." (Citations and punctuation omitted.) Id. at 606. In making such determination, we review the evidence de novo. *Moore v. Food Assoc.,* 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

The record reveals that at approximately 8:00 a.m. on September 15, 1994, Schulze, who was 33 years of age and pregnant, began experiencing vaginal bleeding. At 8:17 a.m., she called 911 and requested an ambulance. DeKalb paramedics were dispatched and arrived at Schulze's home at approximately 8:23 a.m. Upon entering the home, the paramedics noted blood on the floor and running down Schulze's legs. The paramedics delayed transporting Schulze to the hospital in order to find someone to care for Schulze's small child who was at her home. Schulze was admitted to DeKalb Medical Center at approximately 9:00 a.m. An emergency cesarean section was performed at approximately 9:06 a.m., and Albert IV was delivered at 9:11 a.m. Albert IV suffered from fetal distress and perinatal asphyxia.

1. Pursuant to the 1991 amendment to the Georgia Constitution, "sovereign immunity extends to the state and all of its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). This immunity also extends to counties. *Gilbert v. Richardson*, 264 Ga. 744, 746 (2) (452 SE2d 476) (1994). "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

Additionally, OCGA § 36-1-4 provides that "[a] county is not lia-

---

[1] In its order, the trial court stated that it considered "all matters of record" in making its determination.

ble to suit for any cause of action unless made so by statute." "This includes actions brought under a theory of negligence . . ." as the plaintiffs have asserted in this case. *Early County v. Fincher*, 184 Ga. App. 47, 49 (2) (360 SE2d 602) (1987).

In their complaint, the plaintiffs did not state what Georgia law they claim made the county liable under a theory of negligence. Nor did the plaintiffs aver that the county waived its immunity by the purchase of insurance. In their response to the defendants' motion, the plaintiffs asserted that the county waived its immunity to the extent it purchased liability insurance. But, they failed to show the type of liability insurance purchased or under what statutory authority the purchase resulted in a waiver of the county's immunity. Eventually, in their response brief on appeal, the plaintiffs claimed that the county waived its immunity by purchasing liability insurance as set forth in OCGA § 33-24-51.

OCGA § 33-24-51 (a) provides that "a county . . . is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the . . . county . . . under its management, control, or supervision, whether in a governmental undertaking or not, and to pay premiums for the insurance coverage." OCGA § 33-24-51 (b) provides that whenever a county purchases insurance as authorized by OCGA § 33-24-51 (a) "to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased." "OCGA § 33-24-51 (a) gives counties the right to purchase insurance; OCGA § 33-24-51 (b) describes when insurance operates to waive sovereign immunity." *Blumsack v. Bartow County*, 223 Ga. App. 392, 393 (1) (477 SE2d 642) (1996).

In granting the defendants' motion, the trial court held that "no statutory waiver applicable to the facts here has been cited, and none has been discovered by the [c]ourt." We agree. There is no evidence in the record that the county is without immunity pursuant to Georgia law or that the county waived its immunity by the purchase of insurance. Accordingly, we conclude that the county had sovereign immunity, and that this immunity had not been waived.

2. We also hold that the DeKalb County paramedics were entitled to official immunity. "The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his

authority. [Cits.]" *Gilbert*, supra at 752 (6). " 'A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.' [Cit.]" *Johnson v. Gonzalez*, 223 Ga. App. 646, 647 (478 SE2d 410) (1996).

In light of the above, we conclude the paramedics' actions in the instant case were clearly discretionary. Upon arriving at Schulze's home, the paramedics examined the facts: Schulze was bleeding but was capable of walking down stairs and her small child was the only other person at home with her. They exercised personal deliberation and judgment in delaying transportation of Schulze to the hospital for several minutes to make certain that the small child would not be left home alone.

Given that the paramedics' actions were discretionary, their actions had to be "wilful, wanton, or outside the scope of [their] authority" for there to be no immunity. *Gilbert*, supra at 752 (6). The plaintiffs do not allege in their complaint, nor is there any evidence, that the paramedics' actions were wilful, wanton or outside the scope of their authority. Accordingly, they are afforded official immunity.

3. Relying on the Supreme Court of Georgia's holding in *Keenan v. Plouffe*, 267 Ga. 791 (482 SE2d 253) (1997), the plaintiffs argue that the paramedics cannot hide behind the shield of official immunity because they were exercising their independent medical judgment in treating Schulze.

In *Keenan*, a physician operated on a private-pay patient at the Medical College of Georgia Hospital. At the time of the surgery, the physician was also a faculty member at the Medical College. The surgery resulted in brain damage to the patient, for which the patient's husband sued the physician. The court ruled that the physician was not acting within the course of his official duties as a state employee in treating the patient because the duties he was alleged to have violated were independent of his duties as a professor at the Medical College. Id. at 793. The court concluded that "[b]ecause the purpose of official immunity is not furthered by construing the phrase 'official duties' to encompass the exercise of medical discretion with regard to private-pay patients, we decline to construe that phrase to provide protection in this case." Id. at 796.

While the plaintiffs attempt to apply *Keenan* to the instant case, the Supreme Court limited the scope of *Keenan* by stating that "[b]ecause this case involves the exercise of a medical discretion on a private-pay patient that was not controlled by the government employer or by statute, we do not consider whether immunity is

appropriate for state-employed physicians who are required to treat particular patients, or who are alleged to have violated governmental, as opposed to medical, responsibilities, or whose medical discretion is controlled or impacted by governmental standards or constraints." Id. at 796, n. 17. Given the limited scope of *Keenan,* it is inapplicable to county-employed paramedics who are not physicians and who did not treat a private-pay patient.

Additionally, the purpose of official immunity is promoted by extending it to government-employed paramedics. In fact, the legislature, in order to further protect persons rendering emergency care for no remuneration, enacted OCGA § 31-11-8.[2] In providing immunity under OCGA § 31-11-8, the legislature "recognized that insurance for civil liability covered by the exemption would be extremely expensive and difficult to obtain. This problem, combined with the virtually unlimited potential civil liability, could be enough to drive many providers of ambulance service out of the business and greatly discourage others from entering. The effect, in many areas of the state, would be to make emergency ambulance service virtually unobtainable." *Anderson v. Little & Davenport Funeral Home*, 242 Ga. 751, 754 (2) (251 SE2d 250) (1978).

Accordingly, we conclude that *Keenan* is inapplicable in the instant case and that the paramedics were entitled to official immunity for the performance of their discretionary duties.

4. The plaintiffs do not present any argument on appeal concerning the dismissal of the breach of an implied contract claim, and thus any claim of error is deemed abandoned. See Court of Appeals Rules 22 (d) and 27 (c) (2).

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JANUARY 9, 1998 —
RECONSIDERATION DENIED JANUARY 23, 1998

*The Keenan Law Firm, Don C. Keenan, Charles H. Allen,* for appellants.

*Jonathan A. Weintraub, Joan F. Roach, Elizabeth T. Marinelli,* for appellees.

---

[2] OCGA § 31-11-8 (a) provides "[a]ny person, including agents and employees, who is licensed to furnish ambulance service and who in good faith renders emergency care to a person who is a victim of an accident or emergency shall not be liable for any civil damages to such victim as a result of any act or omission by such person in rendering such emergency care to such victim."